## APPEAL OF WILLIAMSON MILLING CO.

Docket No. 1042.    Promulgated December 15, 1926.

1. The principal stockholders of the petitioner owned property used to produce power which was furnished the petitioner. Petitioner credited the power organization for power furnished on a unit production basis and debited it for expenditures made in its behalf, and claims as a deduction the excess of the credits over the debits. As no payments were made by the petitioner for the power furnished nor any liability for payment shown, the amount claimed *held* not deductible.

2. Officers' salaries not shown to have been authorized, accrued or paid in 1918, but entered on petitioner's books in 1919, *held* not deductible from 1918 income.

3. Claim for deduction for repairs disallowed on account of lack of evidence to identify the items making up the amount claimed.

4. Claim for deductions for bad debts and losses denied for lack of evidence.

5. In view of evidence, *held*, there was no intent on the part of petitioner to evade tax, and 50 per cent penalty asserted by Commissioner disallowed.

*W. E. Baird, C. P. A.*, for the petitioner.
*Briggs G. Simpich, Esq.*, for the Commissioner.

The Commissioner determined deficiencies in income and profits taxes for the calendar years 1918 and 1919 in the amounts of $3,183.54 and $2,404.10, respectively, and asserted a 50 per cent penalty for the year 1918. The petitioner alleges error on the part of the Commissioner in disallowing power expenses, deductions for

officers' salaries, deductions for repairs, maintenance and supplies, deductions for bad debts, loss on sale of stock, and in the assertion of the fraud penalty for the year 1918.

### FINDINGS OF FACT.

The petitioner, a Kansas corporation with its principal office at Clay Center, was organized in 1908, and during the taxable years was engaged in the business of milling flour and feed and in buying and selling grain. The principal stockholders were A. L. Williamson, F. L. Williamson, and A. C. Williamson. A. L. Williamson died in April, 1918.

In 1918 the three Williamsons owned jointly a dam across the Republican River at Clay Center and certain other property, which were used to develop water power, and also an auxiliary steam plant. These properties were held for convenience in the name of A. L. Williamson, who was also the active manager of the plant, which operated under the name of the Williamson Power Co. There was no written agreement between the Williamsons regarding the ownership or operation of the power properties.

The Williamson Power Co., during the years here involved and for a number of years prior thereto, furnished the power produced by its properties to the petitioner. For the power thus furnished, the petitioner at the close of each month credited the Williamson Power Co. with an amount computed on the basis of the number of barrels of flour produced. The rate of computation for the period January, 1918, to May, 1919, was 10 cents per barrel. No credit for power was entered for June, 1919. For the period July to November, 1919, and for a part of December, 1919, the power credit was computed at 20 cents per barrel. For the remainder of December the computation was made at the rate of 16 cents per barrel of flour produced. Other credits, representing sales of sand, machinery, and crops produced on the company properties, were entered in the Power Company account from time to time by the petitioner. Expenditures made by the petitioner on behalf of the Power Company for labor, supplies, raising of farm crops, and other items, were entered as debits in the Power Company account carried by the petitioner. No payment was made by the petitioner to the Power Company for the power furnished by the latter. For the year 1918 the credits in the Power Company account exceeded the debits by $7,480.06, and for the year 1919 the credits exceeded the debits by the amount of $6,167.21. The Commissioner disallowed these amounts claimed as deductions representing charges for power.

For the year 1918 the petitioner entered on its books the amount of $750 as the salary of F. L. Williamson, and made no entry to

cover any salary to A. L. Williamson. As of June 30, 1919, an adjustment on account of salaries was entered, charging surplus with salaries stated to be for 1918 in the amount of $2,250, and crediting $600 of this amount to A. L. Williamson and $1,650 to F. L. Williamson. This additional amount of $2,250 was claimed as a deduction for 1918 and was disallowed by the Commissioner.

During the last six months of the year 1918 the petitioner entered numerous items in the " repair " column of its cash journal. For the six-month period these items totaled $6,702.84. The monthly totals of this column were posted to the debit of a ledger account for repairs and a monthly entry then was made debiting the account of depreciation reserve and crediting the account of repairs, thereby transferring monthly the total amount appearing in the repair account to the debit of the depreciation reserve and leaving none of the alleged repairs in expense accounts. The total depreciation charge for the year, including the claimed repairs, was $12,000. Of this amount the Commissioner disallowed $7,214, which includes the amount of $6,702.84 alleged by the petitioner to represent repairs. Adjustments affecting this account have been made amounting to $725.33, leaving $5,977.51 now claimed by the petitioner as a deduction on account of repairs.

During the year 1918 the petitioner charged off a number of items aggregating $9,894.51, and credited to surplus as recoveries on accounts charged off the sum of $70.81, leaving a net amount charged off of $9,823.70. Of the gross amount of $9,894.51 charged off, $6,181.49 was charged against surplus of that amount for the period July 1, 1913, to December 31, 1917, and the balance, $3,713.02, was charged against earnings for the year 1918. Of the net amount of $9,823.70 charged off in 1918 the amount of $7,823.70 is claimed by the petitioner as a deduction on account of bad debts. The Commissioner has not allowed the amount claimed as a deduction.

Included in the amount of $9,823.70 charged off in 1918 is an item of $2,000, claimed to represent a loss on investment in stock of the Kansas Milling & Export Co., which became financially involved about 1916 or 1917 and some time during those years went into the hands of a receiver. No liquidation dividends were ever received by the petitioner. The Commissioner disallowed the loss claimed on account of this investment.

To the deficiency found for the year 1918 the Commissioner has added a penalty of 50 per cent under section 250 (b) of the Revenue Act of 1918. The understatement of tax in the return of the petitioner for 1918 was not made falsely or fraudulently with intent to evade tax.

OPINION.

ARUNDELL: The Williamson Power Co. was given credit on the books of the petitioner for power furnished at a rate based on the number of barrels of flour produced and for income realized from the Power Company properties. The expenses incurred in the production of power and the operation of the Power Company properties were paid by the petitioner and charged on its books against the Power Company. The credits to the Power Company account exceeded the charges against it in both years. It is the difference between the charges and credits in the Power Company account that the petitioner now seeks to have allowed as an operating expense, but there is no evidence as to the liability of the company to pay their stockholders the amount set up on the books, and as a matter of fact no payments were ever made. The Williamson Power Co., as such, never made a return of the amount now sought to be deducted by petitioner, nor did the three Williamsons treat this amount as income in their individual tax returns. The evidence rather indicates that the power plant was operated as an integral part of the mill plant.

Evidence was introduced on the question of the allowance of officers' salaries for both of the years 1917 and 1918. As the year 1917 is not before us for determination, we have made no reference to that year in our findings of fact. As to the year 1918, the petitioner entered on its books as officers' salaries for that year only the amount of $750. A revenue agent's report in evidence and a stipulation filed show that the agent attributed a part of the mill wages and salaries to officers' salaries. While the action taken by the Commissioner is not clearly brought out, it appears that he allowed as mill wages and salaries the full amount shown in that account and did not allow any part of it as officers' salaries. At any rate the petitioner now seeks an additional allowance, as salaries of its principal officers for the year 1918, of $2,250, which was entered on its books in 1919. As the evidence does not show any authorization, accrual on the books of the petitioner, or payment of these salaries in 1918, they are not an allowable deduction for that year. *Appeal of Columbia Textile Co.*, 2 B. T. A. 472, 474, and cases therein cited.

The Commissioner allowed in part and disallowed in part the amount of $12,000 shown on the petitioner's books as a depreciation charge for the year 1918. The amount disallowed included items aggregating $6,702.84, which were originally entered in a so-called " repair account " but which at the end of each month were transferred to depreciation account. Some of these items are obviously not deductible. Others may well be, but no evidence in explanation

of the several items was offered. Only the account as disclosed by petitioner's books was placed in evidence. The general statement that orders issued by the United States Food Administration requiring the production of flour in a manner different from the usual practice of petitioner necessitated more than the average amount of repairs can not serve to establish the deductibility of particular so-called repair items where not a single word of testimony is offered as to their nature.

The deductibility of certain alleged bad debts and of a loss on account of stock held by the petitioner in the Kansas Milling & Export Co. must likewise be denied for lack of evidence. As to what steps the petitioner had taken to secure payment or to determine the worthlessness of the accounts sought to be charged off we are not informed, nor is there any clear testimony as to the year in which the loss was sustained on account of stock owned in the Kansas Milling & Export Co. The mere fact of a receivership is not sufficient to prove the worthlessness of the item.

The 50 per cent penalty added by the Commissioner to the additional tax found due for 1918 was asserted, it appears, on the ground that the Williamson Power Co. was nothing more than a fiction in the accounts of the petitioner and the credits made to its account were solely for the purpose of reducing the petitioner's income. The Williamson Power Co. made no return of income. After hearing the testimony of the president of the petitioner and examining the documentary evidence in the case, it is our opinion that the condition of affairs which occasioned the assertion of the penalty was due to lax methods of bookkeeping and not to any intent on the part of the petitioner or its officers to evade tax.

We accordingly approve the determination of deficiencies in tax for the years 1918 and 1919 and disapprove the determination that a penalty is due for the year 1918.

*Judgment will be entered after 15 days' notice, under Rule 50.*